State *vs.* Abraham L. Tyre.

*Criminal Law—Indictment—Violation of Election Law—Statute*
*—Constitution—Delay in Prosecuting—Motion to Discharge*
*—Endorsement on Indictment—Jurisdiction of Court; Not*
*Lost by Failure of State to Move for a Continuance*
*—Ballots; Misreading; Destruction or Alteration of*
*—Circumstantial Evidence—Perjured Witness;*
*Testimony of—Character Evidence.*

1. An indictment having been found at the May Term, and the State having had the case continued at the September Term, the defendant is not entitled to be discharged under the statute.

2. An indictment will not be quashed because an endorsement made on the back thereof by the Attorney-General states a violation of a certain section, when all the counts charge a violation of another section of the act.

3. The Court does not lose jurisdiction of a case by the mere ending of a term of court and the failure of the Attorney-General to formally move for a continuance.

4. Although the indictment in each of the counts, charges the unlawful act therein described in respect to fifty ballots, it would be sufficient to warrant conviction if the evidence showed the defendant to be guilty in respect to any less or greater number.

5. Ballots cast at a primary election are papers or evidence within the meaning of the Act, and required to be delivered to the Sheriff. Any person stealing, wilfully destroying of etc., such ballots or any part of

them or fraudulently making any entry, erasure or alteration in them would be guilty under the Act.

6. If at the time of the counting of the votes at the close of the polls the inspector wilfully read the name of a candidate other than the one voted for, that would constitute a violation of the Act, and so would any wilful changing or destruction of the ballots.

7. The law relating to circumstantial evidence stated.·

8. The degree of credit which ought to be given to the testimony of a witness who has perjured himself in a former trial stated.

9. The rule as to character testimony stated.

(*November* 22, 1906; *June* 5, 1907.)

LORE, C. J., and SPRUANCE and BOYCE, J. J., sitting.

*Robert H. Richards*, Attorney-General, and *Daniel O. Hastings*, Deputy Attorney-General, for the State.

*J. Frank Ball* for the defendant.

Court of General Sessions, New Castle County, November Term, 1906.

The defendant was indicted for the violation of *Chapter* 393, *Vol.* 20, *Laws of Delaware*, being "An act to provide for the purity of primary elections in New Castle County." The indictment contained seven counts; the substance of which is stated in the charge of the Court.

At the first trial, Ball for the defendant made a motion that the defendant be discharged, on the ground that the indictment was found at the May Term, 1906; that at the September Term, the State, not being ready to proceed with the trial, had the case continued until the November Term; that the second term having passed without trial, the defendant should be dismissed, under the statute (*Rev. Code, Sec.* 17, *p.* 858), providing that "If any person shall be committed for treason, or felony, and shall not be indicted and tried at the next term of the Court where such crime is cognizable, he shall be set at liberty on bail, unless it appear by affidavit that the witnesses for the State (naming them) could not then be had; and if such prisoner shall not be indicted and tried

at the second term after his commitment, he shall be discharged from prison."

*State vs. McDaniel et al.*, 4 *Pennewill* 96.

BOYCE, J.:—In the case of *State vs. McDaniel et al.*, 4 *Pennewill* 96, the defendants were ready for trial at the second term and the State was not ready, and asked to have the case continued and the Court under the circumstances simply refused to continue the case, whereupon the Attorney-General entered a *nolle prosequi* and the prisoners were discharged. The ruling in that case does not apply to the question now raised.

We decline to grant the application to dismiss the defendant.

*Mr. Ball*:—Then I move to quash this indictment. It is endorsed on the back, "May Term, 1906. Indictment for violating *Sec.* 16, *Chap.* 393, *Vol.* 20, *Laws of Delaware*, by wilfully destroying, mutilating, defacing, falsifying, fraudulently removing, secreting and altering ballots taken at a primary election"; and the witnesses are named thereon. .

This is the Attorney-General's endorsement, and I hold it is a part and parcel of the indictment and should be considered as part of the indictment offered to and considered by the Grand Jury, and the Grand Jury indicted this defendant for the things stated on the back of the indictment, among others, for violating *Sec.* 16, *Chap.* 393, *Vol.* 20, *Laws of Delaware*.

There are seven counts in the indictment and each count specifically states that Abraham L. Tyre, this defendant, was not then and there an officer of said primary election "and not then and there being an officer such as is mentioned in *Sec.* 16 *of said Chap.* 393, *Vol.* 20, *Laws of Delaware.*"

I therefore hold that on the face of each count itself this defendant cannot be indicted under this indictment.

BOYCE, J.:—We decline to quash the indictment.

(The first trial, which closed November 22, 1906, resulted in a disagreement of the jury).

On the first day of the succeeding February Term of Court the defendant, Tyre, not being present in Court, the Attorney-

General moved that a *capias* be issued for him returnable forth-with.    Ball, for the defendant, opposed the issuing of the *capias*, stating that no bond had been given to the Court for the appearance of the defendant at this term.

LORE, C. J.:—There is a case standing open on the docket against the defendant which has not been determined finally.

*Mr. Ball*:—The Attorney-General determined the case by failing to continue it at the last term.    I can produce authority at the proper time.    I had no idea that this case would be called to-day.    I therefore ask that your Honors give me until next Monday to collect my authorities, as I want to argue the matter before your Honors.

*Richards, Attorney-General*:—As I view the matter, there is nothing for the State to reply to at this stage.    There is upon the docket of this Court at this term the case of *State vs. Abraham L. Tyre*.    As I undertandthe learned counsel's contention, it is that that case is improperly upon the docket of criminal cases at this term.    I suppose the proper motion for him to make would be to strike the case from the docket.    He has not made that motion and the State has nothing to say, only to ask for a *capias* returnable to-morrow morning at ten o'clock.

LORE, C. J.:—The Court will hear any motion you have to make, Mr. Ball, upon the return of the *capias*.    As it stands now we have no alternative than to order that the *capias* be issued returnable to-morrow morning at ten o'clock.

The following morning the Attorney-General stated that the *capias* had been issued and returned *non est*.    Ball, for defendant thereupon made a motion to strike the case of *State vs. Abraham L. Tyre* from the docket of criminal cases for the present February Term, and produced and read two affidavits made by the Clerk of the Court, Winfield S. Quigley, and his Deputy, George Janvier, respectively, to the effect that no motion was made by the Attorney-General or his Deputy at the November Term, 1906,

of the Court of General Sessions for the continuance of the case of *State vs. Abraham L. Tyre* to the present February Term of Court, after the jury had disagreed in the trial of said Tyre upon the same indictment at said November Term.

Mr. Ball contended that under the above state of facts there was no case against the defendant Tyre lawfully before the Court of General Sessions; that while applications for continuance are addressed to the discretion of the Court, there are certain rules which are recognized as regulating such discretion. These rules, as far as they relate to criminal cases, are: *first*, on application of the prosecution; *second*, on application of the defendant.

*White on Criminal Law, Vol. 3, p.* 411, says that the only way a criminal case has ever been continued from term to term of this court has been on motion either by the prosecution, by the Attorney-General his Deputy or some one representing the prosecution, or by the defendant either in person or by his Attorney. And upon consultation of all the authorities I cannot find any other practice. To hold that a mere general motion for the continuance to the next term of all rules, references and other matters excepting motions for final judgment made at the end of a term by some attorney who represented neither the prosecution nor the defendant, would have any such result as the continuance of a criminal case, is flying in the teeth of all the recognized authorities on this subject.

In the cases of *State vs. Hawkins*, 2 *Pennewill* 474, and *State vs. McDaniel et al.*, 4 *Pennewill* 96, this Court has laid down and prescribed the practice in the matter of the continuance of criminal cases which has been followed by this Court ever since, namely, that an affidavit must be made stating the name of the absent witness and what is proposed to be proved by him.

BOYCE, J.:—That rule was promulgated to prevent delay in trials.

*Mr. Ball:*—This Court has said that that identical practice affects the prosecution the same as it does the defendant. What was the effect of the action of the Attorney-General at the last

term of Court but to delay this trial? The trial of the defendant ended in a mistrial, and during the whole of the balance of the said term the defendant was in attendance on this Court each day thereof, ready and waiting to go to trial so as to have his case finally disposed of by the verdict of the jury then in attendance. Notwithstanding that, the Attorney-General allowed said term to pass without moving for the trial of this defendant after the mistrial, and without moving for the continuance of the case to this present term of Court. Your Honors will not say that the rule against delay applies only to the defendant and that the State can continue from term to term *ad infinitum*, and your Honors have been careful to see that only the proper method has been employed where a continuance has been granted. This case went over from the last term of Court without any motion made upon the part of the prosecution or of the defendant. The State would not have been granted a continuance in this case on the ground of the absence of a material witness unless the Attorney-General had presented an affidavit giving the name of the absent witness and what he expected to prove by him. The defendant has a right to know upon what ground the Attorney-General applies for a continuance of this case; a right to know why he is not tried at the term where he presents himself to be tried, the same as the State has a right to know why the defendant is not ready for trial at that particular term of Court.

To admit this kind of practice would be contrary to the practice laid down by this Court in *State vs. Hawkins* and *State vs. McDaniel*, already referred to. If by general motion a criminal case can be carried over from one term to another, why cannot the Attorney-General do it for a dozen terms?

BOYCE, J.:—You will remember that there were very peculiar circumstances, which it is not necessary to refer to, surrounding the case of *State vs. McDaniel*.

Did not we practically pass upon all this in this case at the last term?

*Mr. Ball:*—No sir. My motion was made then at the time

the Attorney-General was ready for trial and not at the time when the motion was made for a continuance.

*Richards, Attorney-General*:—Under the Constitition, the defendant of course has a right to a speedy trial, but constitutional rights are not different from statutory rights. It is necessary for the defendant, in order to take advantage of those rights, to claim them before the Court. He cannot sit still before the Court and say nothing, and then come into Court claiming that he was deprived of a constitutional right which he has made no effort to claim or avail himself of.

The case of the *State vs. McDaniel*, cited by the learned counsel for the defendant, has no relevancy to the question now before this Court.

The question before your Honors is whether this Court has lost jurisdiction of the case of *State vs. Abraham L. Tyre*, and whether said case is properly upon the trial list at this term. Neither the defendant nor his counsel asked for a trial at the last term of Court, and he has waived whatever right he may have had.

Upon the authorities, this Court will not permit itself to lose jurisdiction of a case by the mere ending of a term of Court, where the original jurisdiction was a proper and lawful one. But upon the rising of the Court at the end of the term all cases of whatever nature, whether they be petitions, rules, motions or what-not, are by operation of law continued to the next term of Court, and the jurisdiction of the Court remains in its entirety.

Upon that ground I contend that the case is properly upon the docket and that the Court has jurisdiction.

BOYCE, J.:—How do you hold, Judge Ball, under the bond of Mr. Tyre, that he is not bound to be here to-day,

*Mr. Ball*:—I hold that under the statute there was no necessity of the man giving bond at that time, but the Court overruled me and I bowed in submission to the ruling of the Court. I did that at the May Term and a new bond was entered into, and at the September Term a new bond was ordered to be entered in this

identical case; showing what this Court thought as applying the
statute to the continuance of the case.

BOYCE, J:—That might have arisen out of precaution in case
of a suit on the bond.    But how are you going to get around this
broad statute?

*Mr. Ball:*—Simply because this Court has ruled the other
way.

BOYCE, J.:—Following up the original practice after this act
had been passed.

*Mr. Ball:*—In this identical case the Court held that where a
case was continued from term to term, it was necessary to enter
into a new bond.

LORE, C. J.:—I don't think the question has ever been raised
particularly.

*Mr. Ball:*—Yes; I raised it in this very case.

BOYCE, J.:—I did not know it had been passed upon. I
have never thought there was any necessity for that being done.
We might say this.    That the Court was fully advised at the last
term as to the situation after this trial.   We were aware of the fact
and talked about the fact, that twelve of the jurors had been
impaneled, that a large number had been challenged, and that
there was not a full jury left out of which to select a new jury
for a re-trial of the case.    The Court never thought for a mo-
ment of losing jurisdiction of the case.

The Court does not lose its jurisidction when once acquired,
except in a clear case.    This is well settled.

LORE, C. J.:—You have made a very able argument, and we
think you have presented all there is in the case, but it does not

strike the Court that it has lost jurisdiction of this case. We decline to strike the case off the list.

(By agreement of the respective counsel the case was subsequently continued to the May Term, 1907, with the understanding that counsel for defendant would have the defendant enter into a new bond for his appearance at said term of Court.)

(At the May Term, 1907, the defendant was again placed on trial upon the same indictment, and at the close thereof, on June 5th, the jury was charged as follows):

BOYCE, J., charging the jury:

Gentlemen of the jury:—The indictment in this case charges Abraham L. Tyre, the defendant, with the commission of certain acts, therein specifically mentioned, in violation of *Chapter* 393, *Volume* 20, *page* 375, *Laws of Delaware*, commonly known as the primary election law in New Castle County.

Section 16 of said act reads: "Every inspector of any primary election, poll clerk, or other officer or person having the custody of any Voting Book of Qualified Voters for Primary Elections, oath, return of votes, certificate, poll list, or any paper, document, or evidence of any description in this act directed to be made, filed or preserved, who is guilty of stealing, wilfully destroying, mutilating, defacing falsifying or fraudently removing or secreting the whole or any part thereof, or who shall fraudulently make any entry, erasure or alteration therein, except as allowed and directed by the provisions of this act, or who permits any other person to do so shall, upon conviction thereof, be adjudged guilty of a misdeameanor," etc.

Section 17 of said act reads: "Every person not an officer, such as is mentioned in the last preceding section, who is guilty of any of the acts specified in said section, or who advises, procures or abets the commission of the same, or any of them, shall, upon conviction thereof, be adjudged guilty of a misdeamenor", etc.

In the reading of said sections you doubtless observed that Section 16 is directed against *any officer* of any primary election who may be guilty of any of the acts specified therein; and that

Section 17 is directed against *any person, not an officer* of any such primary election, who may be guilty of any of the acts specified in said Section 16.

The indictment contains seven counts. The substantial difference between them is in the description or character of the offense with which the defendant is charged.

The first count charges substantially that the defendant did unlawfully and wilfully destroy fifty ballots that had been taken at a certain primary election of the Republican Party held in the Third Election District of the Sixth Representative District, in Brandywine Hundred, this County, on the 24th day of September, A. D. 1904.

The second count charges that the defendant did unlawfully and wilfully mutilate fifty ballots that had been taken at said primary election by crossing out the name of Isaac C. Elliott as candidate for Levy Court Commissioner for the Third Levy Court district in this County, as the same appeared upon said ballots and leaving in the place or stead thereof the name of a candidate other than the said Elliott as having received the votes for said Levy Court Commissioner.

The third count is like the second, except it charges that the defendant did unlawfully and wilfully deface fifty ballots that had been taken at said primary election, by crossing out the name of said Isaac C. Elliott, etc.

The fourth count is also like the second, except it charges that the defendant did unlawfully and wilfully falsify fifty ballots that had been taken at said primary election by crossing out the name of Isaac C. Elliott, etc.

The fifth count charges that the defendant did unlawfully, wilfully and fraudulently remove fifty ballots that had been taken at said primary election from the ballot box which had been placed in said box as directed by said Act of Assembly.

The sixth count charges that the defendant did unlawfully, wilfully and fraudulently secrete fifty ballots that had been taken at said primary election.

The seventh count charges that the defendant did unlawfully

and fraudulently make alterations in fifty ballots that had been taken at said primary election by crossing out the name of Isaac C. Elliott, etc.

The defendant is not charged in any of the several counts as an *officer* of the said primary election, but in each of the counts it is expressly averred that the defendant was not an officer of the said primary election.

It is admitted that the said primary election of the Republican Party was held at the time and place as alleged in the indictment.

The indictment was found at the May Term of this Court, A. D. 1906; and it is alleged therein that the offense charged was committed on the 24th day of September A. D. 1904. That particular date is not material. Satisfactory proof that the offense was committed on some other day within two years before the finding of the indictment is sufficient to sustain the indictment.

Although the several counts in the indictment charge separate and distinct offenses, yet satisfactory proof of the commission of any one of them is sufficient to support the indictment. And while the indictment in each of the counts charges the unlawful act therein described in respect to fifty ballots, if you are satisfied from the evidence that the defendant is guilty of any such unlawful act in respect to any less or greater number than fifty, it would be your duty to find a verdict of guilty.

Section 29 of said act provides among other things as follows: "The said ballots, after having been counted, shall be deposited in the box furnished for that purpose, together with the other said certificates, tally sheets and poll lists. The lid of said box shall be secured by tape crossed and sealed in sealing wax by one of the judges not being the inspector, and shall be delivered by the inspector on the first secular day following such primary election, to the Sheriff of New Castle County, who shall make such disposition of the same as the regularly organized and constituted County Committee or governing authority of the political party, organization or association holding such primary election may direct." * * * * *

We say to you that ballots cast at said primary election were papers or evidence within the meaning of Section 16 of the Act and required to be preserved and delivered to the Sheriff of New Castle County, under Section 29 of the Act. Any person stealing, wilfully destroying, mutilating, defacing, falsifying or fraudulently removing or secreting such ballots or any part of them or who should fraudulently make any entry, erasure or alteration in them would be guilty of a misdemeanor under the Act.

It is claimed by the State that many of the ballots (fifty in number) cast at said primary election, as alleged, for Isaac C. Elliott, a candidate for the office of Levy Court Commissioner, were not read and counted for Elliott, but were read and counted for the defendant, who, it is admitted, was a candidate at said primary election for the same office, and that of the number of ballots so cast for Elliott only fifteen were counted for him. It is further claimed that shortly after the election officers had counted the ballots cast at said primary election, the ballots, a tally sheet, and a certificate of the election were deposited in the ballot-box which was secured by tape and seal, and that Matlack, the Inspector, taking the ballot-box and its contents with him, went with and to the house of the defendant where he left the box and contents until the morning of September 26th following, when the defendant in person delivered the box and its contents to the then sheriff of New Castle County. And the State charges the defendant with wilfully and fraudently committing the several acts averred in the indictment, after Matlack had delivered the ballot-box and contents to him and before he delivered the box to the sheriff.

The defendant denies that Matlack accompanied him to his home or that he left the ballot-box and contents with him or at his home on the night of the election, as it is claimed, but he does admit that he delivered the box to the then sheriff of New Castle County on the morning of September 26th, at the request of Matlack, who, the defendant says, brought the box to his home early on said morning of September 26th. And the defendant denies that he did commit any of the acts with which he is charged. It

is admitted that a fraud was committed in counting the ballots cast at said primary election; and the claim, on the part of the State, is that, after the fraudulent count of the ballots cast at said primary election, and after the ballots so cast together with the certificate of election and tally list, had been placed in the ballot-box and taken into custody by the Inspector, there was a change made in said ballots, and the questions before you are, was such a change made, and if so, did the defendant either make or procure the same to be made?

You have given close and patient attention to the evidence produced in this case. You are the exclusive judges of the credibility of the witnesses and of the weight and value of their testimony. And the question for you to determine is whether any one or all of the several offenses charged against the defendant were committed by him. If at the time of the counting of the votes at the close of the polls the Inspector wilfully read the name of a candidate other than the one voted for, that constituted a violation of said act by him. And if you find from the evidence that there was such false reading of any of the ballots cast at said primary election and that tally lists and certificates were made in accordance with such false reading, and that subsequently before the box was delivered to the sheriff, the ballots were changed, it will be for you to determine who it was that made such a change in the ballots so cast. If you find that the defendant subsequently to the count of the ballots at said primary election took ballots out of the ballot-box, or if you find that he aided, abetted or procured ballots to be taken out of the box, and that he either himself placed or caused other ballots, not voted, to be placed therein, or if he wilfully and fraudulently did or procured another to do any of the acts complained of for the purpose of making the ballots in the box correspond with the count as shown by the tally lists and certificates in order to change the result of the said primary election, it was a gross violation of the law, and it would be your duty to find a verdict of guilty. Any unlawful and wilful changing or destruction of the ballots as charged in the indictment would constitute an offense under the statute, the pur-

pose of the act being to prevent any such false and fraudulent acts. The offense complained of is one of a most serious character. For if such an offense be committed it strikes a deadly blow at the very foundation of popular government. In determining the question of the innocence or guilt of the defendant you are, therefore, called upon to discharge a grave public duty. You may reasonably hope to meet the full measure of responsibility resting upon you at this time by laying aside personal sympathy on the one hand or prejudice on the other, and honestly and fearlessly decide this case on its merits as it has been presented to you by the evidence adduced from the witness stand. And you should not permit any considerations whatever not deducible from the evidence to control you or your conclusion in this case. In weighing the evidence in all its aspects you should take into consideration any bias or personal interest which the respective witnesses may have shown or have, in the result of your finding in this case.

In civil cases a preponderance of evidence is sufficient to warrant a verdict for the party in whose favor it exists; but in criminal prosecutions it is necessary, to warrant a conviction, that the jury should be satisfied of the guilt of the accused beyond a reasonable doubt.

Where there is conflict of testimony, as in this case, you should endeavor to reconcile and harmonize it, if you can. If you cannot do this, you must determine for yourselves what portion of the conflicting testimony you deem most worthy of belief, taking into consideration all the facts adduced and the circumstances surrounding the respective witnesses, their means of information and opportunity of knowing the facts of which they have testified, and the manner in which they gave their testimony.

Circumstantial evidence is receivable in both civil and criminal cases. In criminal cases the necessity of admitting it is much more manifest than in civil cases. Crime is usually committed under cover and it generally seeks secrecy. The possibility of prov-

ing an offense charged by direct or positive evidence is often difficult.

Circumstantial evidence is where some facts being proved, another fact follows as a natural or very probable conclusion from the facts actually proved, so as readily to gain the assent of the mind from the mere probability of its having actually occurred. It is the inference of a fact from other facts proved; and the fact thus inferred and assented to by the mind, is said to be presumed; that is to say, it is taken for granted, until the contrary is proved. And this is what is called circumstantial evidence; and it is adopted the more readily, in proportion to the difficulty of proving the fact by direct evidence. Such evidence, in order to warrant a conviction, must be sufficient to satisfy you beyond a reasonable doubt. The rule is that where the evidence is solely circumstantial, the jury must be fully satisfied, not only that the circumstances are consistent with the accused having committed the act or acts charged as constituting the crime, but they must also be fully satisfied that the facts shown by such evidence are such as to be inconsistent with any other rational conclusion than that the accused was the party who committed the act complained of. The facts established by such evidence must be such as to exclude any other reasonable hypothesis or conclusion.

The degree of credit which ought to be given to the testimony of a witness who has perjured himself in a former trial, is a matter exclusively within the province of the jury. Great caution in weighing such testimony is dictated by prudence and good reason, and it is the practice not to convict a person upon the sole and uncorroborated testimony of a witness who has perjured himself in a former trial. But the jury may act upon the evidence of such a witness if they are satisfied that it is true, without any confirmation of his statement. And in such a case it would be their duty to do so.

The good character of an accused, when proved, is to be taken in connection with all the other evidence in the case; and it is to be given just such weight as in the judgment of the jury it is entitled to.

If after carefully and conscientiously considering and weighing all the evidence in this case, you should entertain a reasonable doubt of the guilt of the defendant, that doubt must inure to his benefit, and your verdict should be "not guilty". But such a doubt must not be a mere fanciful, vague or speculative doubt, but a reasonable, substantial doubt, arising out of the evidence and remaining in your minds after a careful consideration of all the evidence, and such a doubt as reasonable, fair-minded, honest and conscientious men would entertain under all the facts and circumstances of the case.

If you are satisfied from the evidence that the fraudulent changes in the ballots, charged in the indictment, or any of them, were made while the box containing the ballots was in the custody or control of the defendant, it is incumbent upon him to explain and account to your satisfaction for such changes in said ballots. And if you are satisfied from the evidence that the fraudulent changes in the ballots charged in the indictment, or any of them, were made by the defendant, or that he aided, abetted or procured the same to be made, your verdict should be guilty.

Now, gentlemen, we commit this case to you, and after you shall have carefully and conscientiously considered the evidence produced before you, which alone should control you in your deliberations, return such a verdict as to you the evidence seems to warrant.

Verdict, not guilty.